EBDSBIZC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  BIZ2CREDIT, INC.,

4              Plaintiff,

5         v.                          14 Civ. 8223 (ER)

6  SHALINDER KULAR,

7              Defendant.

8  ------------------------------x
                                New York, N.Y.
9                               November 14, 2014
                                10:30 a.m.
10
   Before:
11
                    HON. EDGARDO RAMOS,
12
                                District Judge
13
                    APPEARANCES
14
   EDWARD WEISSMAN
15      Attorney for Plaintiff

16  LITTLER MENDELSON, P.C.
        Attorneys for Defendant
17  BY:  MICHAEL P. PAPPAS

18

19

20

21

22

23

24

25

EBDSBIZC

```
 1              (Case called)
 2              THE DEPUTY CLERK:  Counsel, please state your names
 3    for the record.
 4              MR. WEISSMAN:  Edward Weissman, attorney for
 5    plaintiff.
 6              THE COURT:  Good morning, Mr. Weissman.
 7              MR. PAPPAS:  Michael Pappas, attorney for the
 8    defendant.
 9              THE COURT:  Good morning to you, Mr. Pappas.  I
10    suppose we are here at your request?
11              MR. PAPPAS:  Correct.
12              THE COURT:  So first of all, let me start with
13    Mr. Weissman.  This the first time you guys are appearing
14    before me.  Tell me, in a nutshell, what this case is about.
15              MR. WEISSMAN:  Your Honor, Biz2Credit is suing
16    Mr. Kular because he assisted a former employee of ours in
17    stealing proprietary and confidential materials, violating his
18    employment agreement by soliciting customers and clients of
19    Biz2Credit in direct violation of the agreement.
20              Our claim is for tortious interference with contract
21    because Mr. Kular had a contractual relationship to refer
22    business to us, so he was aware of who our customers were and
23    what our technologies were.  When he teamed up with
24    Mr. Tulshan, who is a defendant in an action in the Supreme
25    Court, New York County, they hurt our company in a very serious
```

EBDSBIZC

1    way.

2            That, in a nutshell, is what this lawsuit is about.

3            THE COURT:  Very well.  Mr. Pappas, why should I grant

4    you leave to make this motion?

5            MR. PAPPAS:  Would you like me to address the

6    jurisdiction issue first or the substantive issue?

7            THE COURT:  Give me your view.

8            MR. PAPPAS:  My view of the case, this case stems, as

9    counsel said, from a former employee who left their company to

10    start his own business in New Jersey.  What they are suing for

11    is that they are claiming that my client induced the former

12    employee to breach a nonsolicitation agreement that he had with

13    the company.

14            However, in order to show that, they have to show that

15    my client was the but for cause of the breach, which they

16    cannot do, because we have sworn statements from the CEO of the

17    company saying that Mr. Tulshan is the one who approached my

18    client, not vice versa.

19            They cannot have it both ways.  If Mr. Tulshan

20    solicited my client, my client could not have interfered with

21    Tulshan's nonsolicitation agreement, because it had already

22    been breached by Tulshan.

23            THE COURT:  I'm sorry, what was that last part?

24            MR. PAPPAS:  We have sworn statements from their CEO

25    claiming that the former employee who left, his name was

EBDSBIZC

1   Tulshan, is the one who solicited my client to do business.

2           Now, in this action, they are claiming that my client

3   induced Tulshan to breach his nonsolicitation agreement.  They

4   cannot have both claims.  Either Tulshan breached his own

5   agreement by approaching my client first, or my client

6   approached Tulshan and induced him to breach the

7   nonsolicitation agreement.

8           THE COURT:  I do not know that the fact that the

9   former employee approached your client in the first instance

10  would necessarily mean that your client cannot be held liable

11  for tortious interference.  Go ahead.

12          MR. PAPPAS:  I think the case law, which we will show

13  you in the motion, does say that once there is an allegation

14  that the party to the contract is predisposed to breach the

15  agreement or had already breached the agreement, the fact that

16  the person they approached then decides to do business with

17  them cannot support a tortious interference claim.

18          THE COURT:  Okay.  Let's talk about the jurisdictional

19  aspect.

20          MR. PAPPAS:  There is no jurisdiction over my client

21  because my client is located in Indiana.  He only does business

22  in the Midwest; Indiana and Ohio.  He owns local businesses,

23  gas stations, convenient stores.  He does not do business in

24  New York.

25          THE COURT:  Well, he does do business in New York with

EBDSBIZC

1   the plaintiff.

2           MR. PAPPAS:  I'm sorry?

3           THE COURT:  He does business in New York with the

4   plaintiff.

5           MR. PAPPAS:  No, he did not.  At the time the cause of

6   action arose, there was no contract, there was no exclusive

7   agreement.  If there was, they would be suing my client for

8   breaching his contract, which they are not doing.  All they are

9   claiming is that my client somehow induced their former

10  employee to breach the employee's contract.

11          THE COURT:  There was not a contract in place between

12  the plaintiff and your client at the time your client

13  purportedly induced the breach?

14          MR. PAPPAS:  That's correct.

15          THE COURT:  Okay.

16          MR. PAPPAS:  All they had was an informal relationship

17  where my client would sometimes refer his friends in Indiana,

18  and this company is essentially a loan broker.  They hook up

19  small businesses with banks who are willing to lend them money.

20  All he did was occasionally refer some of his friends in

21  Indiana to the company.

22          He never came to New York to do business.  He never

23  referred New York companies.  He never had a contract, a

24  written contract, or an exclusive agreement.  He was free to

25  work with their competitors.  He was free to go with whoever he

EBDSBIZC

1   wanted to.

2           THE COURT:  But did there, strictly speaking, need to

3   be a written contract in place in order for two entities to do

4   business together?

5           MR. PAPPAS:  Not necessarily written.  What I am

6   saying, either written or unwritten, there was no contractual

7   relationship in place at the time the alleged tortious

8   interference occurred.

9           THE COURT:  But there were business relationships in

10  place, no?  They were actively doing business together, your

11  client and the plaintiff?

12          MR. PAPPAS:  There were no current deals in place at

13  the time.

14          THE COURT:  Okay.

15          MR. PAPPAS:  In any event, the alleged tortious

16  actions they are alleging did not arise out of that business

17  relationship, in any event.  All they are claiming is he

18  somehow -- there are no facts in the complaint saying how he

19  supposed did this, that he somehow induced Tulshan to breach an

20  agreement that he said he was planning to breach.

21          THE COURT:  Let me ask you this.  The sworn affidavits

22  referred to, are they attached to the plaintiff?

23          MR. PAPPAS:  They are not attached to the plaintiff.

24  The lawsuit against Tulshan is referred to in the complaint.

25  These sworn statements are interrogatory responses in that

EBDSBIZC

1  action.

2      THE COURT:  Assuming that the 12(b)(6) aspect of the

3  motion were to go forward, could I even rely on those

4  affidavits?

5      MR. PAPPAS:  I think you could, your Honor, because,

6  A, they specifically refer to that action in the complaint in

7  this case; and, B, I think there is case law saying that the

8  court can take judicial notice of documents filed in other

9  cases.

10     THE COURT:  Mr. Weissman?

11     MR. WEISSMAN:  Judge, I don't agree with anything that

12  was said, but that shouldn't come as a surprise.

13     My client learned of Mr. Kular's activities through

14  discovery in the existing Supreme Court action.  So, as a

15  result, when we commenced the suit, we only thought Mr. Tulshan

16  alone was culpable.

17     Through discovery, we learned of Mr. Kular's

18  activities.  Mr. Kular had come to New York.  He was thinking

19  of partnering with our clients, he has referred business, had

20  an agreement with our client.  He was paid for the work he

21  performed.  Mr. Kular will be hard-pressed to show that he does

22  not have sufficient contacts where the tortious act was

23  committed out of state and had implications, serious

24  implications, within the state.

25     If he is going to be given permission to make any

EBDSBIZC

```
 1   aspect, we will oppose it and establish a basis for

 2   jurisdiction in this court.

 3           THE COURT:  I have reviewed your letters, and it does

 4   appear as though there is a basis to make the motion.  I will

 5   grant your leave to make the motion, but I will caution you,

 6   Mr. Pappas, if you are going to ask the court -- this happens

 7   in 90 percent of the cases where the lawyers come in and say,

 8   this should be dismissed pursuant to 12(b)(6).  Then they want

 9   to rely on all sorts of matters outside of the complaint, which

10   is, generally speaking, impermissible.

11           If you are going to rely on anything outside of the

12   complaint, I will not consider it unless for each document that

13   you want me to consider, you provide case law indicating that a

14   court on a 12(b)(6) motion can consider such a document.  Okay?

15           MR. PAPPAS:  Understood, your Honor.  As I will argue

16   in the motion, you don't need to consider those documents to

17   rule on the motion.  In any event, that's what they are saying

18   these documents.  It is almost screams, you know, a bad faith

19   that they are swearing the complete opposite thing in two

20   different documents at the same time.  The sworn statements

21   that they submitted in the other case were not at the beginning

22   of the case.  They were in early September of this year, after

23   discovery had pretty much been done.

24           MR. WEISSMAN:  Your Honor, that statement is not so.

25   Discovery has not been completed in the Supreme Court action.
```

EBDSBIZC

```
1    In fact, we haven't even conducted depositions in that action.

2              MR. PAPPAS:  I'm sorry, document discovery.

3              MR. WEISSMAN:  Okay.  Your Honor, can I raise a point

4    that I did not put in my letter, but which I have raised with

5    Mr. Pappas?

6              THE COURT:  Sure.

7              MR. WEISSMAN:  Mr. Pappas represents Defendant Tulshan

8    in the Supreme Court action and he represents Defendant Kular

9    in this action.  Arguably, each one of them could have claims

10   against the other saying, you induced me; no, you induced me.

11   I would at some point, maybe even today, ask that Mr. Pappas

12   make a statement on the record that he has discussed this issue

13   with his client in this action, and that his client has waived

14   any possible claims he has against Mr. Tulshan.  Because I

15   don't want to find us in a position where, at trial, Mr. Kular

16   wakes up and says, you know, no one ever told me that I could

17   have claims against Mr. Tulshan.

18             THE COURT:  Mr. Pappas, Mr. Weissman raises a very

19   good point.  Do you represent both Mr. Tulshan and --

20             MR. PAPPAS:  I do, your Honor.  Of course I am well

21   aware of any professional responsibilities regarding conflicts

22   of interest.  I think it is a little bit insulting that counsel

23   asks that I put something on the record.  I fully discussed

24   this with both clients.  There is no conflict whatsoever.  I am

25   extremely comfortable with our positions in both cases.  I
```

EBDSBIZC

1    don't see any need to put that type of statement on the record

2    at this point.

3                  THE COURT:  Well, I think the court may actually

4    inquire that you do so, because I have a responsibility to the

5    parties.  I may ask your client to proffer under oath that he

6    has discussed this matter with you fully and he understands

7    that there may be aspects that you might not be able to pursue

8    because of your representation of another party who may have a

9    conflicting claim.

10                 It is a serious issue.  I do see it as a serious

11   issue.  I don't think Mr. Weissman did anything improper by

12   raising it.

13                 MR. PAPPAS:  I understand it is a serious issue.  I

14   can assure the court I discussed it with both.  Their positions

15   are exactly the same.  There is no conflict whatsoever.  There

16   is no possibility they are going to take inconsistent

17   positions.  There is no possibility they will have claims

18   against each other.  I am very comfortable saying that.

19                 THE COURT:  Very well.

20                 Mr. Pappas, when do you want to file your papers?

21                 MR. PAPPAS:  Two weeks?

22                 THE COURT:  Mr. Weissman, how much time to you want to

23   respond?

24                 MR. WEISSMAN:  I would ask for the same amount of

25   time.

EBDSBIZC

1          THE COURT:  Two weeks.  Then one week to reply.

2          Ms. Rivera.

3          THE DEPUTY CLERK:  The motion is due November 27,

4  2014.  The opposition is due December 11, 2014.  The reply is

5  due December 18, 2014.

6          THE COURT:  Is November 27 Thanksgiving?

7          THE DEPUTY CLERK:  It is.

8          THE COURT:  Mr. Pappas, do you want the day before or

9  do you want the Monday after?

10          MR. PAPPAS:  I actually meant two weeks from tomorrow.

11  I apologize.  I can do the 28th.

12          THE COURT:  Okay.

13          THE DEPUTY CLERK:  November 28, 2014, December 12 is

14  the opposition, and the reply would be December 19.

15          THE COURT:  Everyone have those dates?

16          MR. WEISSMAN:  Yes.

17          MR. PAPPAS:  Yes.

18          THE COURT:  Anything further?

19          MR. WEISSMAN:  No, your Honor.

20          MR. PAPPAS:  No, your Honor.  Thank you.

21          THE COURT:  Okay, folks.

22                              – – –

23

24

25