UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------------------x
BIZ2CREDIT, INC.,                                    :
                                                     :
                            Plaintiff,               :
                                                     :
                    -against-                        :
                                                     :
SHALINDER KULAR,                                     :
                                                     :
                            Defendant.               :
-----------------------------------------------------------------------x
```

**OPINION AND ORDER**

14 Civ. 8223 (ER)

Ramos, D.J.:

Biz2Credit, Inc. ("Plaintiff") brings suit against Shalinder Kular ("Defendant") for tortious interference with contractual relations and unfair business practices. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a). Before the Court is Defendant's motion to dismiss the Complaint pursuant to Rule 12(b)(2) or, in the alternative, 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendant's motion to dismiss under Rule 12(b)(2) is GRANTED. Because the Court grants dismissal under Rule 12(b)(2), the Court does not reach the Rule 12(b)(6) issue.

I.    **Background**[1]

    A.  **The Dispute**

Plaintiff is a business which assists other businesses in obtaining financing through Plaintiff's customer lists and "unique processes and technologies." Compl. ¶ 4. Defendant is Plaintiff's former client who also occasionally referred potential clients to Plaintiff and, on at least one occasion, was compensated for his referral. *Id.* ¶¶ 5, 6; Shalinder Kular's Declaration

---

[1] The following facts, drawn from the Complaint and the parties' Declarations, are construed in the light most favorable to Plaintiff. *Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.*, No. 00 Civ. 5663 (MBM), 2001 WL 1468168, at *1 (S.D.N.Y. Nov. 19, 2001) (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986); *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 178 (S.D.N.Y. 1995)).

("Def.'s Decl.") ¶ 9.   In September 2013, one of Plaintiff's employees, Neraaj Tulshan

("Tulshan"), left the business.  Compl. ¶ 7.  At that time, Tulshan was bound by an employment

agreement which, in the event of his separation from Plaintiff, barred him from "soliciting

customers and clients of the plaintiff or from interfering with such existing relationships for a

period of one year."  *Id.* ¶ 8.  Tulshan purportedly breached his agreement by soliciting

Plaintiff's clients and stealing Plaintiff's proprietary and confidential information.  *Id.* ¶ 11;

Ramit Arora's Declaration ("Pl.'s Decl.") ¶ 7.  Plaintiff alleges that Defendant, who had been

informed of the the non-solicitation provision of Tulshan's agreement, procured and encouraged

Tulshan's breach.  Compl. ¶¶ 10, 12.

### B.  Defendant's New York Contacts

Plaintiff is a Delaware corporation with its principal office located in New York.  Compl.

¶ 1; Pl.'s Decl ¶ 2.  Defendant is a citizen of Indiana and resides in Indianapolis.  Def.'s Decl. ¶

1.  Defendant owns and operates several small local business in Indiana, including, delis,

convenience stores, frozen yogurt shops, and cafes.  *Id.*  ¶ 6.  Defendant declares he has never (1)

maintained a residence, owned, used, or possessed real property in New York State, *id.* ¶ 2; (2)

maintained a bank account, office address, or telephone number in New York State, *id.* ¶ 3; (3)

conducted business within New York State, *id.* ¶ 4; or (4) solicited, advertised or promoted

himself or his businesses in New York State, *id.* ¶ 5.

However, Defendant is not completely devoid of contacts with the State.  Defendant has

been to New York "six or seven" times for personal reasons.  *Id.* ¶ 7.  Defendant acknowledges

that twice during personal trips he met with Plaintiff:  Once for a "social" visit where business

was not discussed and once where Plaintiff introduced Defendant to "people from a restaurant

chain" to discuss potentially opening locations in Indiana.  *Id.* ¶¶ 7-9.  Any deals involving

Defendant and Defendant's businesses were worked on by Plaintiff from Plaintiff's New York office.  Pl.'s Decl. ¶¶ 2, 15.  Plaintiff also alleges that Defendant attended several meetings in New York, including one at Plaintiff's New York office to discuss Defendant's potential investment in some of Plaintiff's New York based clients.  *Id.* ¶¶ 3, 5, 6.  Plaintiff alleges that Defendant visited "several" more times in New York when Plaintiff introduced Defendant to several of its New York customers.  *Id.* ¶¶ 5, 6.  However, no business deals are alleged to have resulted from those meetings.

Plaintiff and Defendant disagree about whether there was an ongoing contractual relationship between the parties.  Defendant contends that there was none but acknowledges that, while physically located in Indiana, he occasionally referred business to Plaintiff and was paid a referral commission for a one-time referral of an Indiana company.  Def.'s Decl. ¶¶ 10, 11; Def.'s Mem. 3, 18; Def.'s Reply Mem. 8.  Plaintiff contends that starting in mid-2012, Defendant began referring Plaintiff business.  Pl.'s Decl. ¶ 4.  In total, Defendant made six or seven referrals, after which, Plaintiff and Defendant negotiated a referral fee arrangement,[2] pursuant to which, Defendant would be compensated for referrals.  *Id.*  On October 10, 2013, Plaintiff made a payment of $8,000 and another payment for an unspecified amount to Defendant.  *Id.*  Plaintiff alleges Defendant was paid for his services per the referral arrangement  but does not make it clear whether those payments were for referrals made prior to or after they entered the agreement.[3]  Defendant was also issued a 1099 by Plaintiff.  *Id.*

---

[2] Plaintiff does not allege that the arrangement was in writing.

[3] *See id.* ("[Defendant] made six or seven referrals. . . .When these deals closed, [Plaintiff] and [Defendant] negotiated a referral fee arrangement by which defendant would refer potential deals to [Plaintiff], and defendant Kular would be compensated for the referrals.  [Plaintiff] actually wired $8,000.00 to the defendant, on or about October 10, 2013. . . .A further payment was made to defendant Kular by [Plaintiff] at or around the same time."); *id.* at ¶ 16 ("[Plaintiff] hired [Defendant] to act as a referral agent for new deals.  [Defendant] was paid for such services.  [Defendant] took our money and instead of referring business to [Plaintiff], he referred it to Tulshan[.]"); ¶ 19(c) ("[Defendant] was paid for referrals by [Plaintiff] per his agreement with [Plaintiff].").

After Tulshan gave Plaintiff notice he was leaving in September 2013, Plaintiff twice informed Defendant of Tulshan's departure and of the non-solicitation provision in Tulshan's employment contract.  *Id.* ¶¶ 7-9; Compl. ¶ 10.  Both times, Defendant repeatedly assured Plaintiff that he would not refer business to Tulshan and would continue referring business to Plaintiff.  Pl.'s Decl. ¶¶ 8, 9, 12.  In gratitude, Plaintiff made an additional "bonus" payment of $2,000 to Defendant.  *Id.*

Plaintiff alleges that even before Tulshan left Plaintiff's employment, Defendant and Tulshan started working together in violation of Tulshan's contract.  *Id.* ¶ 13.  According to Plaintiff, Defendant and Tulshan engaged in "months of prior planning" and "act[ed] in lockstep" to steal from Plaintiff.  *Id.* ¶ 11.  Defendant purportedly diverted nine deals to Tulshan that were intended for or originally sent to Plaintiff.  Pl.'s Decl. ¶14; Compl. ¶¶ 17-18.  These nine deals involve Indiana, not New York, businesses.  Def.'s Decl. ¶ 12.

### C.  Procedural History

Plaintiff filed an earlier action on September 24, 2013 in the Supreme Court of the State of New York, New York County, against Tulshan and Hudson Capital Advisors, LLC for damages arising from Tulshan's alleged violation of his employment agreement and theft of proprietary and confidential information from Plaintiff.  *See* Compl. ¶11; *Biz2Credit, Inc. v. Neeraj Tulshan and Hudson Capital Advisors, LLC*, No. 65718/13 ("*Tulshan* Action").   It was through discovery obtained in the *Tulshan* action that Plaintiff learned of Defendant's purported tortious conduct.  Compl. ¶ 12.

Plaintiff originally commenced this action in the Supreme Court of the State of New York, New York County, on September 9, 2014.  *See* Compl.  On October 15, 2014, Defendant removed this action to this Court on the basis of diversity jurisdiction.  On November 14, 2014, a

pre-motion conference was held before this Court, at which Defendant was granted leave to file the instant motion.

## II.   Standard of Review

"A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02 Civ. 4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999)).  To meet this burden, the plaintiff must plead facts sufficient for a *prima facie* showing of jurisdiction.  *Id.* [4]  The Court construes all of Plaintiff's allegations as true and resolves all doubts in its favor.  *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)).  "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 185 (2d Cir. 1998)).  As 12(b)(2) motions are "inherently . . . matter[s] requiring the resolution of factual issues outside of the pleadings," courts may rely on additional materials when ruling on such motions.  *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.,* No. 91 Civ. 3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb.

---

[4] This standard applies where the Court evaluates jurisdiction based on the pleadings and declarations.  At an evidentiary hearing or trial, "the plaintiff must demonstrate the court's personal jurisdiction over the defendant by a preponderance of the evidence."  *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 335 (S.D.N.Y. 2000) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)).

5, 1992); *Darby Trading Inc. v. Shell Intern. Trading and Shipping Co. Ltd.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008).[5]

When the Court is confronted by a motion raising a combination of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether a claim was stated by the complaint. *See Darby Trading*, 568 F. Supp. 2d at 335; *Yellow Page Solutions*, 2001 WL 1468168, at *3 (citing *Rationis Enter., Inc. v. AEP/Borden Indus.,* 261 F.3d 264, 267-68 (2d Cir. 2001)). As the jurisdictional issue is decisive, the Court does not reach Defendant's Rule 12(b)(6) argument.

## III.  Discussion

### A.  Personal Jurisdiction

In a diversity action, personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). This determination involves a two-step analysis. *Metro. Life Ins. Co.*, 84 F.3d at 567. In New York, the Court must first determine whether personal jurisdiction is appropriate pursuant to the State's general jurisdiction statute, C.P.L.R. § 301, or its long arm jurisdiction statute, C.P.L.R. § 302. If and only if the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the second step is an evaluation of whether the Court's exercise of personal jurisdiction comports with the Due Process Clause of the United States Constitution. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).

---

[5] Defendant attaches four exhibits in support of its motion to dismiss. Defendant contends that the Court may consider extrinsic material to determine whether Plaintiff should be granted leave to amend. However, on reply, Defendant states "the Court need not consider the extrinsic materials in order to deny leave to amend" because Plaintiff's Declaration confirms the allegations in the extrinsic material. Def.'s Reply at 8. The Court does not consider the extrinsic material, which, even if considered, does not change the Court's jurisdictional analysis.

The Complaint does not specifically identify the statutory basis for this Court's personal jurisdiction over Defendant.  However, Plaintiff's submissions argue personal jurisdiction is warranted under New York's long arm statute, C.P.L.R. § 302(a).  As Plaintiff does not allege that Defendant is subject to New York's general jurisdiction statute, C.P.L.R. § 301, the Court will evaluate jurisdiction under New York's long arm statute, C.P.L.R. § 302(a), only.

### i.  Long Arm Jurisdiction

Under C.P.L.R. § 302(a), a court may exercise personal jurisdiction over any non-domiciliary who, either in person or through an agent:  (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state;" (2) "commits a tortious act within the state . . . ;" (3) "commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;" or (4) "owns, uses or possesses any real property situated within the state."  N.Y. C.P.L.R. § 302(a)(1)-(4) (McKinney).[6]

### (1) Section 302(a)(1)

Section 302(a)(1) allows courts to exercise jurisdiction over a non-domiciliary who transacts any business within the state or contracts anywhere to supply goods or services in the state, provided the causes of action arise from those acts.  *Bank Brussels Lambert*, 171 F.3d at 786; *Neewra, Inc. v. Manakh Al Khaleej Gen. Trading and Contr. Co.*, No. 03 Civ. 2936

---

[6] Section 203(a)(4) does not apply as Defendant does not own, use, or possess real property in New York.  *See* Def.'s Decl. ¶ 2.

(MBM), 2004 WL 1620874, at *3 (S.D.N.Y. July 20, 2004).  A defendant transacts business within the meaning of Section 302(a)(1) when it purposefully "avails itself of the privilege of conducting activities [in New York], thus invoking the benefits and protections of its laws." *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380, 849 N.Y.S.2d 501, 505, 880 N.E.2d 22, 26 (N.Y. 2007) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 38, 229 N.E.2d 604, 607 (N.Y. 1967)).  Similarly, a defendant contracts to supply services in the state "when he projects himself into New York to perform services and purposefully avails himself of the privileges and benefits of performing such services in the State." *Liberatore v. Calvino*, 742 N.Y.S.2d 291, 292, 293 A.D.2d 217, 220 (1st Dep't 2002) (citing *Bank Brussels Lambert*, 171 F.3d at 789)).  To justify this Court's jurisdiction over Defendant, Plaintiff relies primarily on (1) the purported referral agreement between them, (2) meetings held in New York physically attended by Defendant, and (3) the purported scheme between Defendant and Tulshan.

To determine whether a non-domiciliary has "transacted business" in New York, courts consider the totality of the circumstances.  *Yellow Page Solutions*, 2001 WL 1468168, at *6. Common factors include, but are not limited to:

> (1) whether the defendant has an ongoing contractual relationship with a New York corporation; (2) whether the defendant negotiated or executed a contract in New York and whether the defendant visited New York after executing the contract with the parties; (3) whether there is a choice-of-law clause in any such contract; and (4) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Wing Shing Products (BVI), Ltd. v. Simatelex Manufactory Co., Ltd.*, 479 F. Supp. 2d 388, 397 (S.D.N.Y. 2007); *Yellow Page Solutions*, 2001 WL 1468168, at *6 (citing *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir. 1996)).

Two factors—the existence of a New York choice of law clause and "whether the contract requires franchisees to send notice and payments into the forum state or subjects them to supervision by the corporation in the forum state"—do not provide any support for the assertion of jurisdiction here.  There are no allegations that the purported agreement contains a choice of law provision or that Defendant is a franchisee, sends notice or payments into New York, or is supervised by Plaintiff.  Factors one and two provide only minimal support.  Whether the parties had an ongoing contractual relationship due to the purported referral agreement is in contention. The Complaint does not allege that the purported referral agreement was negotiated or executed in New York,[7] nor does Plaintiff specify whether the meetings with Defendant in New York occurred after the agreement was purportedly entered.  Pl.'s Decl. ¶ 5.  Even assuming the existence of an ongoing contractual relationship and that the parties met in New York after the agreement was entered, Plaintiff has not alleged that Defendant transacted business or provided services in New York under the agreement.  Indeed, as currently pled, the Complaint does not allege that Defendant performed services or transacted business in New York under the agreement.  The six or seven referrals made by Defendant occurred before the contract was entered.  *See id.* ¶ 4 ("All told, [Defendant] made six or seven referrals. . . .When these deals closed, [Plaintiff] and [Defendant] negotiated a referral fee arrangement . . ."").  While Plaintiff alleges Defendant was paid per the agreement, nowhere is it alleged that Defendant made any referrals to Plaintiff after they entered into the agreement.[8]

---

[7] In Plaintiff's opposition, Plaintiff describes Defendant as "having contracted with [Plaintiff] in New York to refer business to [Plaintiff]."  Pl.'s Mem. at 18.  However, Plaintiff's Declaration and Complaint do not allege that the contract was negotiated or executed in New York although several meetings in New York are discussed.  *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir.1998); *Malmsteen v. Universal Music Grp., Inc.*, No. 10 Civ. 3955 (PAE), 2012 WL 2159281, at *3 (S.D.N.Y. June 14, 2012).

[8] Plaintiff alleges that Defendant brought one deal to Plaintiff in 2013 but that the deal was ultimately referred to Tulshan, not Plaintiff.  *Id.* ¶ 10.

"The appropriate focus of an inquiry under CPLR § 302(a)(1) is on what the non-domiciliary defendant did in New York and not on what the plaintiffs did." *Berkshire Capital Grp., LLC v. Palmet Ventures, LLC*, No. 06 Civ. 13009 (PAC), 2007 WL 2757116, at *4 (S.D.N.Y. Sept. 21, 2007) (quoting *Int'l Customs Assocs., Inc. v. Ford Motor Co.,* 893 F. Supp. 1251, 1262 (S.D.N.Y. 1995)), *aff'd,* 307 Fed. App'x 479 (2d Cir. 2008). The "services" that Defendant provided was making referrals to Plaintiff in New York, not for Defendant to perform services in New York. The activities performed in New York (providing financing) were performed by Plaintiff, not Defendant. Defendant's activities were performed in Indiana—referring Indiana businesses[9] from his location in Indiana to Plaintiff for Plaintiff to perform services in New York. As such, Defendant did not purposefully avail himself of the privileges and benefits of conducting activities or performing services in New York. *See Berkshire Capital Grp., LLC v. Palmet Ventures, LLC*, 307 Fed. App'x 479, 481 (2d Cir. 2008); *Royalty Network, Inc. v. Harris*, 947 N.Y.S.2d 53, 54, 95 A.D.3d 775, 775 (1st Dep't 2012).

In *Berkshire Capital Group*, plaintiffs, New York and Colorado based purchasers, brought an action against defendants, an Illinois company, an individual managing member of the company, and a trust organized under Illinois law, for breach of a letter of intent to purchase a hotel in Chicago. 307 Fed. App'x at 481. Defendants negotiated the letter of intent through telephone calls and emails to New York, but did not enter the State, and returned the signed letter of intent to New York. *Id.* The letter of intent included a choice of law provision, which provided the letter was "made in" and was subject to New York law. *Id.* at 480. Based on these

---

[9] Out of the six or seven referrals identified by Plaintiff, two businesses are based in Indiana. *See* Pl.'s Decl. ¶ 4; Def.'s Decl. ¶ 12; Compl. ¶ 17. The locations of the other four or five businesses are not identified. Pl.'s Decl. ¶ 4. The one referral Defendant acknowledges he was compensated for was made from Indiana, for an Indiana company, and the resulting transaction between Plaintiff and the referral business occurred without Defendant's involvement. Def.'s Decl. ¶ 11.

contacts, the Second Circuit found the defendants did not "project itself into New York" because the contract "was to be performed entirely outside of New York."  *Id.* at 481.  The Second Circuit also found that "the mere fact that [defendants] engaged in *some* contact with a New York purchaser does not mean that [defendants] transacted business in New York."  *Id.* (emphasis original).

In *Royalty Network*, plaintiff, a New York music publishing corporation, brought an action against defendant, a non-domiciliary promoter, for breaching a consulting agreement.  947 N.Y.S.2d at 54, 95 A.D.3d at 775.  The court found it lacked jurisdiction over defendant notwithstanding the consulting agreement and communications between the parties regarding referrals by defendant to plaintiff because "all of the New York activities relating to the consulting agreement, including publishing, administering and exploiting the songwriter's compositions in New York's media outlets, were performed by plaintiff and cannot be attributed to defendant."  *Id.* at 54, 775-76; *see also Executive Life Ltd. v. Silverman,* 890 N.Y.S.2d 106, 108, 68 A.D.3d 715, 716 (2d Dep't 2009) (finding defendant, Colorado based law firm, did not purposefully avail itself of the privileges of conducting business in New York, by contracting with New York based search agency to find potential employees, noting that defendant did not specify that the employee must come from New York and the employee did not come from New York).

Similar to the defendants in *Berkshire Capital* and *Royal Network*, Kular is not subject to personal jurisdiction in New York because his performance under the referral agreement was to occur outside of New York.  Any New York based activities resulting from the referral agreement were performed by Plaintiff, not Defendant.  The fact that here, Defendant was occasionally physically present in New York on matters unrelated to the referral agreement, does

not change the analysis.  There is no allegation that the New York meetings had anything to do with the purported referral agreement.[10]

In addition to the referral agreement, Plaintiff points to "several" meetings in New York between Plaintiff and Defendant as evidence that Defendant transacted business in New York. *See* Pl.'s Decl. ¶ 3 (May 2012 meeting at Plaintiff's office to discuss possible investment in New York entities), ¶ 5 (several additional meetings), ¶ 6 (introductions to several of Plaintiff's New York clients).  "Although a visit to the forum is a presumptively more significant contact that a phone call or letter, it too must be 'purposeful' in order to sustain jurisdiction." *Three Five Compounds*, 2011 WL 5838697, at *4 (quoting *U.S. Theatre Corp. v. Gunwyn/Lansburgh Ltd. Partnership*, 825 F. Supp. 594, 596 (S.D.N.Y. 1993)).  Meetings that do not result in the execution of a contract or are not essential to or do not substantially advance the business relationship rarely provide the basis for jurisdiction pursuant to Section 302(a)(1).  *See Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 398-99 (S.D.N.Y. 2004) (collecting cases); *Bozell Group, Inc. v. Carpet Co-op of Am. Ass'n, Inc.*, No. 00 Civ. 1248 (RWS), 2000 WL

---

[10] Plaintiff argues that Defendant need not be physically present in New York to "transact business" under Section 302(a)(1), Pl.'s Mem. 19, 22, and alleges the parties "started doing business" in 2010, Pl.'s Decl. ¶ 2.   While taken together, Plaintiff's allegations may be read to suggest telephone and email communications occurred with Defendant dating back to 2010, such communications with New York are also generally insufficient to impose personal jurisdiction. *Kulas v. Adachi*, No. 96 Civ. 6674 (MBM), 1997 WL 256957, at *7 (S.D.N.Y. May 16, 1997) ("Only in cases where the telephone call or communication clearly shows that the defendant intends to project itself into ongoing New York commerce, such as where a defendant directly conducts market activity or securities transactions in New York over the telephone, do New York courts sustain jurisdiction based on telephone calls or facsimile transmissions alone."); *see also Metro. Air Serv. v. Penhberthy Aircraft Leasing*, 648 F. Supp. 1153, 1156 (S.D.N.Y. 1986).  Plaintiff nowhere alleges the kind of communication that shows Defendant intended to project himself into New York commerce.

Courts have found "personal jurisdiction where parties' communications were part and parcel of an extended relationship involving multiple transactions or the provision of services over multiple years." *Three Five Compounds, Inc. v. Scram Techs., Inc.*, No. 11 Civ. 1616 (RJH), 2011 WL 5838697, at *10 (S.D.N.Y. Nov. 21, 2011).   According to Plaintiff, the parties' business relationship began in 2010 or 2011 after Defendant retained Plaintiff to arrange financing for the sale of several of Defendant's businesses and that by 2012 "the parties began to enjoy a solid relationship which plaintiff hoped to develop further going forward."  Compl. ¶¶ 5, 6; Pl.'s Decl. ¶¶ 2, 19(b).  While Plaintiff generally alleges the existence of a business relationship, neither party specifies the extent of the relationship required to support finding personal jurisdiction based on an "extended relationship" theory.

1523282, at *6 (S.D.N.Y. Oct. 11, 2000) (finding two meetings in New York that took place three months apart, were not part of a systematic pattern of New York visits, and did not result in any contract being signed, did not rise to the level of "transacting business" required for Section 302 jurisdiction); *PaineWebber Inc. v. WHV, Inc.,* No. 95 Civ. 0052 (LMM), 1995 WL 296398, at *3 (S.D.N.Y. May 16, 1995) ("occasional meetings in the forum state that are exploratory, unproductive or insubstantial are insufficient to establish requisite contacts with the state").[11] Here, it is not alleged that a contract was negotiated or entered at these meetings. It is not clear what, if anything, was accomplished at these meetings. Although Defendant was present in New York for what Plaintiff alleges were several meetings, these meetings did not result in the transaction of business.

Lastly, Plaintiff contends that the scheme between Defendant and Tulshan—to breach Tulshan's employment agreement by referring Plaintiff's clients to Tulshan and stealing Plaintiff's proprietary and confidential information—was hatched in New York where Tulshan was employed and should be viewed as another New York contact.[12] Pl.'s Mem. at 3, 19. However, the allegations that Tulshan and Defendant worked together to harm Plaintiff are almost wholly conclusory. *See* Pl.'s Decl. ¶ 11 ("All of this [setting up a competing business and "seamlessly" working on Defendant's deals] clearly involved months of prior planning between Tulshan and [Defendant], both acting in lockstep with one objective: steal as much as possible from [Plaintiff]."); ¶ 13 ("[Plaintiff] has determined that the defendant has been actively working

---

[11] Plaintiff contends that these New York meetings allowed Defendant to become familiar with Plaintiff's business and use that knowledge to help Tulshan violate his employment agreement. Pl.'s Decl. ¶15 ("Little did we know that [Defendant] was using these visits to assist Tulshan in his scheme to steal [Plaintiff's] clients."). Although Plaintiff's causes of action for tortious interference and unfair competition likely would be considered to have "arise[n] out of" these New York meetings, this argument concedes the meetings did not substantially advance the parties' relationship.

[12] Plaintiff does not state what section of New York's long arm statute this contact should be evaluated under.

with Tulshan even before the time Tulshan left [Plaintiff's] employ"); ¶ 19(e) ("The tortious conduct of [Defendant] was engineered and advanced through Tulshan in New York in furtherance of their agenda, namely, harm [Plaintiff]").  Two allegations—that Defendant informed Tulshan of Plaintiff's ongoing deals and worked with Tulshan on certain deals meant for Plaintiff—are not sufficient to confer jurisdiction.[13]  Plaintiff does not allege that Defendant met with Tulshan in New York or allege that communications with Tulshan occurred while he was employed in New York.  Even if communications occurred while Tulshan was in New York, these are not the type of communications that show Defendant intends to project himself into New York commerce.  *See Kulas*, 1997 WL 256957, at *7.  The only meeting alleged to have taken place between Tulshan and Defendant occurred in Indiana.  Compl. ¶ 9.  As such, Plaintiff's conclusory allegations regarding Defendant's and Tulshan's purported scheme does not confer jurisdiction under Section 302(a)(1).

### (2) Section 302(a)(2)

Under Section 302(a)(2), a court may exercise personal jurisdiction over a non-domiciliary who "commits a tortious act within the state . . . " either in person or through an agent.  Courts typically require that the defendant have been physically present in New York while committing the tortious act to confer jurisdiction under Section 302(a)(2).  *See Overseas Media, Inc. v. Skvortsov*, 277 Fed. App'x 92, 95 (2d Cir. 2008); *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997).  Here, there are no allegations that Defendant was physically present in New York when the scheme was "hatched" or when the alleged torts were committed.  However, personal jurisdiction under Section 302(a)(2) may be conferred on an out-of-state

---

[13] *See id.* ¶ 14 ("Based upon our own investigation, we have determined that, at a minimum, [Defendant] has worked with Tulshan on the following deals . . ."); ¶ 17 ("[Defendant] . . . informed Tulshan precisely what ongoing deals were in the pipeline with [Plaintiff].").

defendant based on acts taken by an agent or co-conspirator in New York.  *See LaChapelle v.*

*Torres*, 1 F. Supp. 3d 163, 169-70 (S.D.N.Y. 2014); *Emerald Asset Advisors, LLC v. Schaffer*,

895 F. Supp. 2d 418, 430 (E.D.N.Y. 2012).[14]

Plaintiff does not expressly allege a jurisdictional theory based on conspiracy.  However,

"the Complaint need not expressly allege participation in a conspiracy" for jurisdictional

purposes.  *See LaChapelle*, 1 F. Supp. 3d at 170; *DirecTV Latin Am., LLC v. Park 610, LLC*, 691

F. Supp. 2d 405, 425 (S.D.N.Y. 2010) (adopting magistrate's report and recommendation)

(evaluating jurisdiction under a theory of conspiracy where Plaintiff did not assert a claim for

civil conspiracy or argue how the elements of conspiracy were met but instead made claims for

aiding and abetting a breach of fiduciary duty and fraud).

To allege jurisdiction under a theory of conspiracy, Plaintiff must first "make a *prima*

*facie* showing of a conspiracy."[15]  *LaChapelle*, 1 F. Supp. 3d at 170.  Courts then consider

whether "a defendant's membership in the conspiracy" should confer jurisdiction based on

whether "(1) the out-of-state co-conspirator had an awareness of the effects of the activity in

New York, (2) the New York co-conspirators' activity was for the benefit of the out-of-state

conspirators, and (3) that the co-conspirators in New York acted at the behest of or on behalf of,

or under the control of the out-of-state conspirators."  *Id.* (internal citations omitted).

---

[14] As used in Section 302(a)(2), "agent" is defined broadly to include a defendant's formal agents and, under certain circumstances, a defendant's co-conspirators.  *See First Capital Asset Mgt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 394 (S.D.N.Y. 2002), *on reconsideration,* 219 F. Supp. 2d 576 (S.D.N.Y. 2002), *aff'd sub nom., First Capital Asset Mgt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004).  "Whether a defendant's representative is an 'agent' for purposes of § 302(a) hinges on whether the representative acted 'for the benefit of and with the knowledge and consent of [the] defendant and [the defendant] exercised some control over [the agent] in the matter."  *Emerald Asset Advisors*, 895 F. Supp. 2d at 430.

[15] The four elements of conspiracy are:  (1) "a corrupt agreement between two or more parties," (2) "an overt act in furtherance of the agreement," (3) "the parties['] intentional participation in the furtherance of the plan or purpose," and (4) "the resulting damage or injury."  *LaChapelle*, 1 F. Supp. 3d at 170.

Even assuming that Plaintiff made a *prima facie* showing of conspiracy, Plaintiff fails to allege that jurisdiction should be conferred on Defendant based on his alleged membership in the conspiracy.  Plaintiff's allegations are devoid of any suggestion that Tulshan acted on behalf of, under the control of, or for the benefit of Defendant.  *See First Capital Asset Mgt.*, 218 F. Supp. 2d at 395 (finding no jurisdiction under a conspiracy theory where Plaintiff made no "specific factual allegations" regarding control over the alleged co-conspirator's tortious acts).  In fact, Plaintiff alleges that Tulshan acted of his own accord, not at the direction of Defendant, when he solicited Plaintiff's customers, including Defendant.  *See* Pl.'s Decl. ¶ 7 ("Even before Tulshan left [Plaintiff's] employ, we learned that Tulshan had already solicited customers, including defendant Kular, for his new business).  Plaintiff also asserts no facts that Defendant directed Tulshan to steal Plaintiff's proprietary and confidential information.  *See, e.g.*, Compl. ¶ 16 ("Once Tulshan had seized the proprietary and confidential materials and set up his competing business, the defendant named herein began referring business to Tulshan and his new company, at the expense of the plaintiff and in violation of plaintiff's agreement with Tulshan.").  Plaintiff does not allege that Tulshan's actions or resulting business were of any benefit to Defendant.  As such, Tulshan's New York contacts cannot be imputed to Defendant for jurisdictional purposes.

### (3) Section 302(a)(3)

Section 302(a)(3) applies to non-domiciliary defendants who "commit[] . . . tortious act[s] without the state causing injury to person or property within the state."  Pursuant to Section 302(a)(3), courts apply a "situs-of-injury test, which asks them to locate the 'original event which caused the injury.'"  *Bank Brussels Lambert*, 171 F.3d at 791.  "[T]he situs of such a nonphysical commercial injury is the place where 'the critical events associated with the dispute took place' and not where the resultant monetary loss occurred."  *Darby Trading*, 568 F. Supp.

16

2d at 337 (quoting *Am. Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.,* 439 F.2d 428,

433-34 (2d Cir. 1971)).

An injured party's domicile or residence in New York cannot, alone, establish

jurisdiction. *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 467 (S.D.N.Y.

2008). Nor can "[t]he occurrence of financial consequences in New York due to the fortuitous

location of plaintiffs in New York . . . where the underlying events took place outside New

York." *United Bank of Kuwait v. James M. Bridges, Ltd.*, 766 F. Supp. 113, 116 (S.D.N.Y.

1991). "Courts usually find the situs of the injury, in tortious interference actions, is where the

company 'lost business,' not the location from which the company primarily operates." *United

Mobile Techs., LLC v. Pegaso PCS,* 509 Fed. App'x 48, 50 (2d Cir. 2013); *Park West Galleries,

Inc. v. Franks,* No. 12 Civ. 3007, 2012 WL 2367040 (CM), at *4-5 (S.D.N.Y. June 20, 2012).

However, "harm to a business in the New York market through lost sales or lost customers" may

meet the requirement of injury in the forum state but "those lost sales must be in the New York

market, and those lost customers must be New York customers." *Energy Brands*, 571 F. Supp.

2d at 467; *Darby Trading*, 568 F. Supp. 2d at 336.

Plaintiff alleges that Defendant encouraged Tulshan to breach his employment agreement

by referring Plaintiff's known customers to Tulshan causing Plaintiff to lose business and

customers. Compl. ¶¶ 12, 15, 17. However, Plaintiff nowhere alleges that these lost customers

were New York customers or that the lost business was New York business. The only specific

injury alleged by Plaintiff are nine deals that were allegedly referred to Tulshan, not Plaintiff, as

a result of Defendant's tortious conduct. *See id.* ¶¶ 17, 18. Defendant contends, and Plaintiff

does not dispute, that "none of those deals involved New York or New York businesses" but

involve "local businesses in Indiana." Def.'s Decl. ¶ 12. As pled, the injury did not occur in

New York.  *See ICC Primex Plastics Corp. v. LA/ES Laminati Estrusi Termoplastici S.P.A.*, 775 F. Supp. 650, 656 (S.D.N.Y. 1991).

Plaintiff argues that in addition to the loss of customers and business caused by Defendant's and Tulshan's tortious behavior, Plaintiff was also injured by the actual loss of proprietary and confidential information purportedly stolen by Tulshan.  Pl.'s Mem. at 23. However, the injury resulting from Tulshan's purported theft is still the loss of non-New York business and non-New York customers.  *See* Pl.'s Decl. ¶¶ 10, 11, 17, 18(c); Pl.'s Mem. 17, 18.[16] Moreover, the two cases relied on by Plaintiff, *Manufacturing Technologies, Inc. v. Kroger*, No. 06 Civ. 3010 (JSR), 2006 WL 3714445 (S.D.N.Y. Dec. 13, 2006) and *LaChapelle*, 1 F. Supp. 3d 163, are inapposite.

In *Manufacturing Technologies*, the court found plaintiff made a *prima facie* showing of personal jurisdiction

> because plaintiff (and its intellectual property) is based in New York, the injury from the alleged trade secret theft is felt within New York State no matter where the theft took place. *See, e.g., Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 204-06 (1978) (finding financial injury to be felt in New York where defendant's out-of-state act of misappropriation of trade secrets threatened loss of New York sales).

2006 WL 3714445 at *2 (citing *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 204-06, 385 N.E.2d 1055, 1059 (N.Y. 1978).  In *Sybron*, the New York Court of Appeals explained:

> It has been said that remote injuries located in New York solely because of domicile or incorporation here do not satisfy CPLR 302 (subd. (a), par. 3). Plaintiff's case does not rest on so narrow a foundation nor does its case depend on whether unfair competition injures it in every State in which it does business. It is, however, critical that it is New York where plaintiff manufactures and relines glass-lined equipment and the alleged trade secrets were acquired,

---

[16] In addition, for the reasons discussed in Section III(A)(i)(2), the Complaint does not adequately allege facts that would permit the actions of Tulshan to be imputed to Defendant.

and the economic injury plaintiff seeks to avert stems from the
threatened loss of important New York customers.

*Sybron Corp.*, 46 N.Y.2d at 205, 385 N.E.2d at 1059 (internal citations omitted); *see also Intl.
Biometric Grp., LLC v. Intrepid Solutions and Servs., Inc.*, No. 12 Civ. 4029 (ALC), 2012 WL
2369501, at *3 (S.D.N.Y. June 21, 2012) (explaining that the *Sybron* court found a direct injury
was sustained in New York where plaintiff "alleged that it acquired the trade secrets at issue in
New York and, further, that the defendant's unfair competition threatened to pilfer [plaintiff's]
significant New York customers").[17]   As shown by the *Manufacturing Technologies* court's
citation to *Sybron*, the court does not stray from the principle that jurisdiction under Section
302(a)(3) is appropriate where a loss of New York customers is threatened or suffered.  *See* 2006
WL 3714445 at *2 (citing *Sybron Corp.*, 46 N.Y.2d at 204-06, 385 N.E.2d at 1059).  No such
loss is alleged here.

The *LaChapelle* court found a third party defendant was subject to jurisdiction for
tortious interference under Section 302(a)(3) where she allegedly interfered with New York
customers.  1 F. Supp. 3d at 172-73.  Here, Plaintiff does not allege that the theft threatened or
resulted in the loss of New York sales or customers.  The *LaChapelle* court also analyzed

---

[17] In *Penguin Group (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 36 (2d Cir. 2010), the Second Circuit recognized that
in intellectual property actions, "[d]istrict courts in this Circuit . . . have reached disparate results" regarding the
situs of injury with "some concluding that the injury occurs where the plaintiff experiences the loss; some
concluding that it depends where the infringed property is held . . .; and some concluding that the injury occurs
where the infringing conduct took place."  The Second Circuit therefore certified the following question to the New
York Court of Appeals:  "[i]n copyright infringement cases, is the situs of injury for purposes of determining long-
arm jurisdiction under N.Y. C.P.L.R. § 203(a)(3)(ii) the location of the infringing action or the residence or location
of the principal place of business of the copyright holder?"  *Id.* at 34.  The New York Court of Appeals narrowed the
question to "cases involving the uploading of a copyrighted printed literary work onto the Internet" and concluded
that the situs of injury in this context was "the location of the copyright holder."  *Penguin Group (USA) Inc. v. Am.
Buddha*, 16 N.Y.3d 295, 301-02, 921 N.Y.S.2d 171, 173-74, 946 N.E.2d 159, 161-62 (N.Y. 2011).  The Court of
Appeals explained that "although it may make sense in traditional commercial tort cases to equate a plaintiff[']s
injury with the place where its business is lost or threatened, it is illogical to extend that concept to online copyright
infringement where . . . it is difficult, if not impossible, to correlate lost sales to a particular geographic area." *Id.* at
16 N.Y.3d at 305, 921 N.Y.S.2d at 176, 946 N.E.2d at 164.  The Court of Appeals decision is inapplicable to this
action.  The instant action is a "traditional commercial tort case," does not involve the internet, and sales can be
correlated to a particular geographic region.

whether a third party defendant was subject to personal jurisdiction for conversion under Section 302(a)(2) pursuant to an agency or conspiracy theory. *Id.* at 170-71 (finding jurisdiction existed where the third party defendant allegedly directed the alleged theft). As discussed above, Plaintiff fails to adequately allege facts to support conferring jurisdiction on Defendant based on Tulshan's tortious behavior in New York.

Even if Plaintiff could adequately allege that Defendant "commit[ed] a tortious act without the state causing injury to person or property within the state," Plaintiff's allegations are insufficient to allege that Defendant either "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. §302(a)(3)(i), (ii). "[C]lause (i) does not require the quantity of New York contacts that is necessary to obtain general jurisdiction under the 'doing business' test of CPLR 301, [but] it does require something more than the 'one shot' single business transaction described in CPLR 302(a)(1)." *Ingraham*, 90 N.Y.2d at 597, 665 N.Y.S.2d at 12, 687 N.E.2d at 1295 (internal citations omitted). As explained above, Plaintiff fails to adequately allege that Defendant transacts business under Section 302(a)(1). Plaintiff also fails to allege that Defendant derived substantial revenue from services rendered because Defendant did not render any services in New York. Regarding subsection (ii), "[t]he nonresident tortfeasor must expect, or have reason to expect, that his or her tortious activity in another State will have direct consequences in New York." *Id.* at 598, 13, 1295. Here, although Plaintiff is located in New York, Defendant cannot "reasonably expect" direct consequences in New York from referring out-of-state customers to another company. Lastly, although Plaintiff asserts it will establish the

revenue derived by Defendant through his dealings with Tulshan and others through discovery, Plaintiff cannot establish that Defendant "reasonably expect[ed]" consequences from his acts to be directly felt in New York.  Pl.'s Mem. at 20.[18]

### IV.    Leave to Amend the Complaint

Rule 15 of the Federal Rules of Civil Procedure instructs courts to "freely give leave" to replead "when justice so requires."  FED. R. CIV. P. 15(a)(2).  The Supreme Court has held that it would be an abuse of discretion, "inconsistent with the spirit of the Federal Rules," for a district court to deny leave without some justification, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  However, amendment "is not warranted absent some indication as to what appellants might add to their complaint in order to make it viable."  *Shemian v. Research In Motion Ltd.*, 570 Fed. App'x 32, 37 (2d Cir. 2014) (summary order) (citation omitted); *Laborers Local 17 Health and Ben. Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 604 (S.D.N.Y. 1998) (granting leave to amend where the court found plaintiff did not make a *prima facie* showing of jurisdiction but plaintiff's memorandum of law suggested their awareness of additional jurisdictional facts).

Here, while Defendant moves to dismiss the Complaint with prejudice, Plaintiff has not requested leave to amend, nor indicated additional facts that would be added to the Complaint. As such, the Court is not required to grant leave to amend *sua sponte*.  *See Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison L.L.P.*, 351 Fed. App'x 472, 474 (2d Cir. 2009) ("Given

---

[18] Because this Court lacks personal jurisdiction over Defendant under Section 302(a), the Court does not reach the question of whether personal jurisdiction would comport with the Due Process Clause of the United States Constitution.  *Chloe*, 616 F.3d at 164.

that [plaintiff] did not move for leave to replead in opposition to [defendant's] motion to dismiss

his original complaint with prejudice, the district court did not abuse its discretion by failing to

grant him, *sua sponte*, leave to replead."); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249 (2d

Cir. 2004) (finding where "Plaintiff has not requested leave to amend, nor indicated additional

facts that would be added to the complaint . . . the District Court was under no obligation to

provide [plaintiff] with leave to amend their complaint, much less provide such leave *sua*

*sponte*."). Nevertheless, "where the possibility exists that the defect can be cured, leave to

amend at least once should normally be granted unless doing so would prejudice the defendant."

*Laborers Local 17 Health and Ben. Fund*, 26 F. Supp. 2d at 604 (citing *Oliver Schools, Inc. v.*

*Foley*, 930 F.2d 248, 253 (2d Cir.1991)). Here, Plaintiff has not had a prior opportunity to

amend and it is possible that Plaintiff can plead additional facts to support finding jurisdiction

over Defendant without prejudice to Defendant.

## V.    Conclusion

For the reasons set forth above, Defendant's motion to dismiss is GRANTED without

prejudice. Should Plaintiff wish to amend the Complaint such motion shall be due within thirty

(30) days of the date of this Opinion. The Clerk of the Court is respectfully directed to terminate

the motion, Doc. 9.

It is SO ORDERED.


Dated:    May 21, 2015
          New York, New York

                                                    Edgardo Ramos, U.S.D.J.